**AR–CON BUILDING SPECIALTIES, INC., Plaintiff-Appellee,**

**v.**

**FAMCO, INC., et al., Defendants-Appellants.**

**No. 72–3806.**

United States Court of Appeals, Fifth Circuit.

June 25, 1973.

Rehearing Denied Aug. 3, 1973.

J. Edward Thornton, Mobile, Ala., for defendants-appellants.

Charles J. Fleming, Mobile, Ala., for plaintiff-appellee.

Before WISDOM, GEWIN and CLARK, Circuit Judges.

GEWIN, Circuit Judge:

Ar-Con Building Specialties, Inc. (Ar-Con) brought this diversity action in the United States District Court for the Southern District of Alabama seeking to collect a commission it had allegedly earned while acting as sales agent for appellant Famco, Inc. (Famco). Service of process upon Famco, a Mississippi corporation, was accomplished pursuant to one of the Alabama long-arm statutes.[1] After each side had been afforded a full opportunity to present its case, the district court granted Ar-Con's motion for a directed verdict. It is from this action by the trial court that Famco appeals. For the reasons developed in the remainder of this opinion, we reverse the judgment of the district court and remand the case for a new trial.

Famco is a Mississippi corporation engaged in the manufacture of wall panels for use in the construction industry. It employs commissioned sales agents to solicit orders for its products; the agents are independent operators over whom the appellant exercises little control.

Upon obtaining an order they submit it to Famco's headquarters in Jackson, Mississippi for acceptance. If an order is approved, Famco then arranges for the goods sold to be delivered to the purchaser. Famco has made several substantial sales to Alabama purchasers in this fashion, and it employs a number of sales agents to solicit business in Alabama.

On April 29, 1971 Ar-Con, an Alabama corporation, was hired by Famco to be its exclusive sales representative in certain designated counties of Alabama and Mississippi. In the employment contract signed by both parties it was agreed that for each purchase order obtained Ar-Con would earn a commission of ten percent on the gross selling price less freight. The agreement provided that "When Famco is paid in full, your commission is paid in full." But nowhere in the contract was there any discussion of what was to happen with respect to Ar-Con's commission if a sale it arranged was not accepted by Famco or for some other reason was never consummated.

Operating under this employment contract, Ar-Con procured a purchaser for some of Famco's wall panels. The Jordan Construction Company (Jordan), a subcontractor working on the construction of the Albert P. Brewer Developmental Center in Mobile, decided to use Famco's product in its work on the project. After several rounds of preliminary negotiations among representatives of Famco, Ar-Con, and Jordan, a purchase agreement was finally signed. According to its terms Famco was to furnish at a fixed price the panels required by Jordan in order to complete work on the project. The panels were guaranteed by Famco to be free from defects for at least seven years. In addition Famco agreed to furnish a material supply bond. During the preliminary negotiations Jordan had requested Famco to agree to obtain, in addition to a material supply bond, a seven year

---

1. Title 7, § 193 Alabama Code 1940 (Recomp.1958).

products warranty bond. As initially drafted by Jordan, the purchase agreement required Famco to supply such a bond. But Famco resisted this requirement and ultimately must have prevailed because the final purchase agreement made no mention of a products warranty bond. Jordan was apparently satisfied with nothing more than Famco's own seven year guarantee of its product. The final clause of the purchase agreement did provide, however, that "This agreement is contingent upon approval by the contractor and architect of the bonds, shop drawings and samples."

The sale generated by Ar-Con and agreed upon by Famco and Jordan was never consummated. As yet it has not been determined exactly why the sale was aborted. It is undisputed that the project's architect, upon whose approval the sale was contingent, refused to authorize the use of Famco's panels unless a seven year products warranty bond was furnished. When Famco learned that the architect was insisting upon a products warranty bond, it made efforts to obtain one but was unable to do so. At trial Famco presented evidence in support of its contention that Jordan cancelled the purchase order upon being informed that it was impossible for Famco to obtain the products warranty bond required by the architect. Famco took the position that there was never any question about its ability to obtain the material supply bond specifically required by the purchase agreement. On the other hand Ar-Con contended that upon learning of the architect's insistence on a products warranty bond Famco promised to obtain one and that the contract was not cancelled until it became apparent that Famco could furnish neither a material supply bond nor a products warranty bond.

In any event in spite of the failure to complete the sale, Ar-Con demanded its commission from Famco. It took the position that a commission was earned once a ready, willing and able purchaser was found and a purchase agreement reached and that Famco could not defeat the right to a commission by breaching the agreement and failing to complete the sale. When Famco refused to pay on the grounds that under the employment agreement a commission was earned only if the sale was consummated and the purchase price received, this action was initiated.

■ Before determining whether the district court properly granted a directed verdict in favor of Ar-Con, we must first consider Famco's contention that the district court never acquired personal jurisdiction over it and accordingly erred in denying its motion to quash service of process. Famco was served in accordance with one of Alabama's long-arm statutes, Title 7, § 193, Alabama Code 1940 (Recomp.1958). Famco argues that it is not amenable to suit in Alabama because it is not "transacting business" within the state and because the conclusory affidavit filed with the Secretary of State by Ar-Con did not meet the requirements of Title 7, § 193. But Alabama courts have never held that anything more than a conclusory affidavit is required by their long-arm statutes.[2] Furthermore they have frequently held that a foreign corporation "transacts business" within the meaning of the long-arm statutes if it solicits orders for its products within the state, either through agents or independent dealers, warrants the fitness of the products it sells, and then arranges for the products sold to be delivered to the purchasers.[3] At the minimum Famco's

---

2. New York Times Co. v. Sullivan, 273 Ala. 656, 144 So.2d 25 (1962), rev'd on other grounds, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1963).

3. King Homes, Inc. v. Roberts, 46 Ala. App. 257, 240 So.2d 679, cert. denied 286 Ala. 736, 240 So.2d 689 (1970). See also King & Hatch v. Southern Pipe and Supply Co., 435 F.2d 43 (5th Cir. 1970); Elkhart Engineering Co. v. Dornier Werke, 343 F.2d 861 (5th Cir. 1965); Orange-Crush Grapico Bottling Co. v. Seven-Up Company, 128 F.Supp. 174 (N.D.Ala.1955), and Boyd v. Warren Paint & Color Co., 254 Ala. 687, 49 So. 2d 559 (1950).

activities in Alabama fall within this definition of "transacting business." In addition the contracts which gave rise to this suit were made in Alabama. In these circumstances we are confident that Famco is amenable to suit in Alabama under Title 7, § 193 and that the district court correctly denied the motion to quash service of process.

More meritorious is appellant Famco's contention that the district court erred in granting a directed verdict in favor of Ar-Con. By directing a verdict the trial court in effect decided that under the law applicable to this case and the evidence adduced at trial reasonable minds could arrive at no other conclusion but that Ar-Con was entitled to its commission.[4] It reached this decision in spite of the fact that the sale upon which Ar-Con bases its claim for a commission was never consummated. Famco argues that the trial court's decision ignores the terms of the employment agreement between the parties. Its position is that under the agreement a commission is earned only if a sale is completed and the purchase price received. In support of its position Famco points to the provision in the contract which states that "When Famco is paid in full, your commission is paid in full."

But the quoted provision does nothing more than specify the time of payment once a commission has been earned. e. g. when Famco is paid in full. As indicated earlier neither it nor any other provision in the contract addresses the question of what is to be done about Ar-Con's commission in the event a sale is arranged with a ready, willing and able purchaser but is thwarted by Famco. To answer that question we must turn to the law of the forum state.

■ Ar-Con refers us to a line of cases in which the Alabama courts have been called upon to resolve disputes between real estate brokers and land owners over commissions. Penney v. Speake[5] is a typical example. A land owner had assigned a price to each one of several pieces of property he owned and then had authorized a real estate broker to sell them. The broker located a purchaser willing to buy on the owner's terms, but the sale was never consummated because the owner reneged. When the owner refused to pay the commission agreed upon, the broker sued for it. In affirming a judgment for the broker, the Alabama Supreme Court responded to the owner's contention that a commission was earned only if a sale was completed with these words:

> While there is a distinction between contracts by which a broker is employed to procure a purchaser for property and contracts by which he is employed to effect a sale or to sell, the rule in this jurisdiction is that brokers employed under the latter type of contract, as well as those employed under the first-mentioned type, are entitled to their compensation where they have procured a purchaser ready, able and willing to perform the terms specified or agreed upon, notwithstanding no actual transfer takes place because of the refusal of the seller to convey.[6]

In Alabama, then, a real estate broker earns his commission when he finds a purchaser ready, willing and able to buy on the owner's terms; at that time the sale is treated as constructively consummated insofar as the broker's right to a commission is concerned.

■ This rule of law is well-established and has been reaffirmed on numerous occasions.[7] Furthermore it has

---

4. Boeing Co. v. Shipman, 411 F.2d 365 (5th Cir. 1969).

5. 256 Ala. 359, 54 So.2d 709 (1951).

6. Id. at 714.

7. Taylor v. Riley, 272 Ala. 690, 133 So. 2d 869 (1961). Accord Terry Realty Co. v. Martin, 220 Ala. 282, 124 So. 901 (1929); De Briere v. Yeend Bros. Realty Co., 204 Ala. 647, 86 So. 528 (1920), and Handley v. Schaffer, 177 Ala. 636, 59 So. 286 (1912).

been applied to an ordinary contract between a commissioned sales agent and his principal such as the one presently before us. For instance in Alabama Fuel & Iron Co. v. Adams, Rowe & Norman [8] a coal manufacturer had employed a sales agent to dispose of the entire output of its coal mines. A dispute arose over the agent's right to commissions on certain sales. In affirming a judgment in favor of the agent, the Alabama Supreme Court quoted the rule applicable to real estate brokers and then said: "We are persuaded the foregoing principle is applicable to the agency contract here considered." [9] Similarly in Barber-Greene Co. v. Gould [10] a sales agent sought to recover its commission on a sale of goods which the purchaser had returned to the seller because they were defective. The Court held that the seller's default in supplying defective goods could not serve to relieve him of the obligation to compensate the agent for arranging the sale in good faith. A careful reading of these cases inexorably leads us to the conclusion that in Alabama a commissioned sales agent is treated no differently than a real estate broker with respect to compensation; once he produces a buyer ready, willing and able to purchase on the seller's terms, he has earned a commission, and the seller cannot deprive him of it by aborting the sale. [11]

Applying the Alabama rule to the facts of the case at bar, we are persuaded that the district court erred in directing a verdict for Ar-Con. The evidence presented at trial was by no means so overwhelming as to admit of no other conclusion but that Ar-Con was entitled to the commission. It is true that the purchase agreement between Jordan and Famco is evidence that Ar-Con had found a ready, willing and able purchaser, but the agreement was contingent upon the approval of the project's architect. Apparently the architect refused to approve the purchase in the absence of a products warranty bond. Although Famco made efforts to obtain such a bond, it was not contractually bound to do so. It had resisted this requirement from the beginning and had successfully prevented its inclusion in the purchase agreement. Famco cannot rightfully be charged with aborting the sale because it was unable to obtain a bond it had never agreed to provide. As long as the architect continued to demand a products warranty bond, Jordan was unable to purchase on Famco's terms, and the sale could not be completed. At this stage of the case the evidence points overwhelmingly to the conclusion that it was the architect's insistence upon a products warranty bond, rather than Famco's inability to provide one, which aborted the sale and deprived Ar-Con of the commission it might have earned.

In reaching its decision, the trial court seems to have been influenced by Ar-Con's argument that Famco was never able to obtain the supply bond it had promised. But the record evidence is inconclusive on whether or not Famco was able to furnish the supply bond. Moreover it is far from clear, considering all of the evidence, that this failure, even assuming that it did occur, thwarted the sale. There is strong evidence that even if a supply bond had been furnished the architect nevertheless would not have approved the sale unless a products warranty bond was also furnished. As long as the architect remained adamant in his insistence on a products warranty bond, there was no purchaser ready,

---

8. 216 Ala. 403, 113 So. 265 (1927).

9. *Id.* at 269.

10. 215 Ala. 73, 109 So. 364 (1926).

11. Other jurisdictions have fashioned a similar rule. *See generally* 3 Am.Jur.2d Agency § 250 (1962) and 1 Corbin on Contracts § 50 (1963).

willing, and able to buy on Famco's terms, and Ar-Con had not earned a commission. In these circumstances it would have been more appropriate to direct a verdict in favor of Famco.

Ar-Con argues, however, that the architect's insistence on a products warranty bond was no real barrier to the sale because he could have been persuaded to waive the requirement. It suggests that the sale foundered before such a waiver could be obtained because Famco was unable to furnish the supply bond it had definitely promised. 'Alternatively Ar-Con takes the position that upon learning of the architect's intransigence Famco made an additional promise to obtain the warranty bond demanded. Ar-Con in effect contends that in spite of its earlier resistance Famco eventually succumbed to the purchaser's demands, orally agreed to vary the terms of the purchase agreement, and committed itself to supply a products warranty bond. If any of these contentions are proven,[12] then the sale's miscarriage could rightfully be attributed to Famco's failure to keep its commitments, and Ar-Con's claim to a commission would be valid. Although the record before us lends little support to Ar-Con's position, it is not our function to resolve these issues in the first instance. The case must be remanded to the district court for a new trial at which Ar-Con will have an opportunity to prove its contentions. If it produces sufficient evidence in support of its contentions to create issues of fact, then the case should be submitted to a jury. Otherwise Ar-Con has no right to a commission and a verdict should be directed in favor of Famco.

Reversed and remanded with directions.

---

12. With respect to the claim that the contract was varied by a subsequent parol agreement, Ar-Con would have to offer proof in support of its position in accordance with the requirements of the substantive law of Alabama applicable to changing written contracts by subsequent oral agreement. We do not make the slightest suggestion as to what principles of Alabama contract law may be applicable upon proof of this contention.