Plaintiff-appellee, Harold B. Moore, a real estate agent, filed suit against appellants, John R. Foote, his brother, Gurnie H. Foote, and Foote Brothers' Furniture, Inc., claiming commissions under a real estate sales contract. The jury returned a verdict in favor of Moore for $13,167.50. The trial court denied appellants' motion for a new trial and they appealed. We affirm.
The parties talked about selling appellants' stores which were located in Rainbow City and Alabama City, respectively. On August 7, 1972, Moore and the Foote brothers executed a contract which was prepared by Moore, and read, as follows:
 "This is an exclusive contract for the sale of property between the owner, Foote Bros. — Rainbow Dr. Forrest Ave., and Harold B. Moore Realty Co., Gadsden, Alabama. This property is as follows: Foot Bros. Furniture Stores, Rainbow Dr., Ala. City, Furniture Carpet Lots. Lease account, 30 70 day accounts, Inventory Fixtures, all accounts. I will furnish title policy brought down to date convey title by warranty deed. This property is in fee simple in my name title is good and saleable. I agree to pay Harold B. Moore Realty Co. 10% commission on the sale of this property. The desired price is $670,000 Bldg./834,000 Businesses. I agree to refer all inquiries to Harold B. Moore or his agent and to give all possible assistance in securing a purchaser and to PAY COMMISSION in the event I sell direct. Also in the event this property is rented or leased rather than sold, I agree to pay 1/2 of the first month's rent 5% for the balance of the lease, to be paid to Harold B. Moore on or before the 10th of each month. Harold B. Moore is the Sale agency for 150 days from this date and thereafter until given written notice of 30 days. I hereby acknowledge receipt of a copy of this authorization to sell.
 /s/ /s/ OWNER John R. Foote Owner Gurnie H. Foote
Date 8/7/72
/s/ Witness Harold B. Moore
Ala. 2618 Forrest Ave. 547-5489"
John Foote provided the realtor Moore with a list of contacts and Moore immediately started to negotiate the purchase of the businesses. Moore made several contacts and submitted progress reports to the Footes. One of the contacts was to Rhodes Furniture Company whose home office is located in Atlanta, Georgia. Following Moore's correspondence with Rhodes, Albert Haywood Arnold, Rhodes' area manager for the Alabama-Georgia region contacted Moore and asked him to supply some data pertaining to the Foote Brothers' operation. Moore forwarded the requested information, including a resume of the operation of the stores along with profit and loss statements.
In late August or early September of 1972, Mr. Arnold and Mr. Wilgus, president of Rhodes, plus another individual from Rhodes, met in Gadsden, and together with Moore, went to the Rainbow City store. On this occasion the Rhodes personnel met with John Foote and inspected that store's layout. Later that day, the Rhodes personnel, *Page 908 
along with John Foote and Moore, drove to the Alabama City stores where they met with Gurnie Foote. After looking over the Alabama City stores, the people from Rhodes returned to Atlanta. Following this first visit, Rhodes made it clear to both the Foote brothers and Moore that it was not interested in the package deal offer to purchase all of the stores. However, some two or three weeks after this first visit, Rhodes made a second visit. In addition to Arnold, Rhodes was represented by their Vice President and Furniss Johnson. Johnson was in charge of the acquisition of stores on behalf of Rhodes. On this occasion, Johnson, Arnold and Moore met with John Foote at the Rainbow City store. After looking over this store, they left, with Johnson returning to Atlanta.
On December 4, 1972, John Foote sent a letter to Moore informing him that his contract was terminated as of January 7, 1973. Moore replied by letter dated December 8, 1972, saying that he would be entitled to a commission if the property was sold in the future to any prospects that he had worked. During this period Moore continued his contacts with Rhodes and had regular meetings with Arnold.
On February 3, 1973, Gurnie Foote wrote Moore advising him that his contract was cancelled. Moore received a similar letter from Gurnie Foote on February 23, 1973. The following day Moore sent a letter to Gurnie Foote claiming a commission if all or part of the Foote Brothers' business was purchased by a client that he had worked during the period of his contract. On February 26, 1973, Gurnie Foote wrote Moore stating "[O]ur contract with you has been completely terminated. Please take our property off your list."
Rhodes made a third visit to the Rainbow City store in February, 1973. Present at this meeting were Johnson, Arnold and John Foote. Neither the Foote brothers or Rhodes contacted Moore about this meeting. On February 27, 1973, Johnson wrote a letter to John Foote advising him that Rhodes would submit an offer in the near future. This offer was made in letter form to John Foote on March 5, 1973. On April 13, 1973, John Foote wrote Johnson incorporating substantially all of the provisions in Johnson's offer to purchase. On April 17, 1973, Johnson wrote John Foote and indicated that the general provisions of his letter would be satisfactory except for two changes made in the lease provisions.
In July or August of 1973, John Foote contacted Arnold about selling the Rainbow City store. In late August, 1973, Rhodes purchased the Rainbow City store from the Foote brothers. When Moore learned of the purchase, he contacted appellants demanding his commission. They refused and Moore filed his complaint. The jury found for Moore in the sum of $13,167.50.
Appellants raise two issues on appeal. First, they contend that the trial court erred in giving Moore's requested charges 4 and 5. Second, they contend that the trial court erred in refusing to give appellants' charge 1 to the jury.
Moore contends that charges 4 and 5 are applicable to a contract to purchase, and that, in the instant case, the agreement is based on a contract to sell property. Charges 4 and 5 provide:
 "4. I charge you, members of the jury, that in determining whether a broker has earned a commission for procuring a purchaser, it is enough that the effort of the broker, acting upon the purchaser, are the efficient cause of the purchaser's offer to purchase, but the broker's efforts need not be the sole cause.
 "5. I charge you, members of the jury, that if you find from the evidence that Harold B. Moore was the agent of the Defendants, and that Harold B. Moore enlisted Rhodes', Inc., as a customer, and that the Defendants new (sic) that Harold B. Moore had enlisted Rhodes' as a customer, and that Harold B. Moore's services were the efficient cause of the offer of Rhodes' to purchase from the Defendants, then your verdict should be in favor of the Plaintiff against the Defendants."
Appellants refer us to a line of cases in which the Alabama courts have been called *Page 909 
upon to determine what rules of law are applicable to real estate broker's contracts, particularly contracts to procure a purchaser and contracts to sell real property. Handley v.Shaffer, 177 Ala. 636, 59 So. 286 (1912); Bailey v. Padgett,195 Ala. 203, 70 So. 637 (1915).
Appellants concede in brief that the trial court's oral charge "comes the closest to stating a correct proposition of the law." The trial court's oral charge reads in pertinent part:
 "A broker who procures a prospect who is ready, willing and able to buy under the terms of the contract during the existence of the contract, is entitled to his commission, although the sale may not have been concluded during the term of the contract. However, the seller is not bound forever by the contract. And unless the broker has procured a purchaser who is ready, willing and able to buy under the terms of the contract and during the existence of the contract, or unless the sellers were guilty of bad faith or guilty of fraud in their subsequent negotiations with the broker's prospect, the broker would not be able to recover."
In Penney v. Speake, 256 Ala. 359, 54 So.2d 709 (1951), this Court stated:
 "While there is a distinction between contracts by which a broker is employed to procure a purchaser for property and contracts by which he is employed to effect a sale or to sell, the rule in this jurisdiction is that brokers employed under the latter type of contract, as well as those employed under the first-mentioned type, are entitled to their compensation where they have procured a purchaser ready, able and willing to perform the terms specified or agreed upon, notwithstanding no actual transfer takes place because of the refusal of the seller to convey."
In Alabama, then, it is a well established rule of law that a real estate broker earns his commission when he finds a purchaser ready, willing and able to buy on the terms specified or agreed upon. And at that time, the sale is treated as constructively consummated insofar as the broker's right to a commission is concerned. Ar-Con Building Specialties, Inc. v.Famco, Inc., 480 F.2d 162 (CAS 1973); Taylor v. Riley, 272 Ala. 690, 133 So.2d 869 (1961); Handley v. Shaffer, 177 Ala. 636,59 So. 286 (1912). A careful reading of the cases leads us to the conclusion that charges 4 and 5 along with the trial court's oral charge were properly given and adequately state the law to be applied in this case.
Appellants contend, however, that even if the above-mentioned charges are correct propositions of law, the giving of these charges was erroneous in that Moore received no offer from Rhodes during the terms of his contract. Appellants' position is that Moore brought Rhodes to them as a prospect, but not as a purchaser and therefore, Moore cannot claim a commission on a sale which transpired some seven months after Moore's contract had terminated. There is ample evidence to show that appellants knew after Rhodes' first visit in late August or early September, 1972, that Rhodes was not interested in a package deal offer. In addition, there is evidence to support the finding that appellants did not instruct Moore to discontinue his negotiations with Rhodes.
The evidence as to whether Moore was a procuring cause of the purchase of appellants' store and business in Rainbow City and whether Rhodes was an able, ready and willing buyer were questions for the jury's determination. Penney v. Speake,256 Ala. 359, 366, 54 So.2d 709 (1951); Marx v. Lining, 231 Ala. 445,165 So. 207 (1935). It is uncontradicted that Moore brought appellants and Rhodes together for the first time. At the first meeting between the parties Rhodes was interested in at least the Rainbow City Store even though the contract spoke in terms of a package deal. The jury could have concluded, however, that the sellers knew as early as the time of the first meeting with Rhodes' representatives that Rhodes was interested only in the Rainbow City Store. As a matter of fact, all negotiations between the broker, the prospective buyer, and the sellers centered *Page 910 
around this one store after the first meeting, and it was this store which is the subject matter of the lawsuit.
The trial court's general oral charge, to which there was no objection, stated that:
 ". . . the seller is not bound forever by the contract. And unless the broker has procured a purchaser who is ready, willing and able to buy under the terms of the contract and during the existence of the contract, or unless the sellers were guilty of bad faith or guilty of fraud in their subsequent negotiations with the broker's prospect, the broker would not be able to recover."
We think the evidence supports a finding by which the jury could have concluded that Moore obtained a purchaser who was ready, willing and able to buy. In fact, the jury could have concluded from the evidence that at the time the sellers and the broker were in a dispute over the contract that the sellers were negotiating for and received an offer from Rhodes. Therefore, there was ample evidence from which the jury could have concluded that the sellers were guilty of bad faith in their subsequent negotiations with the broker's prospect. Where there is credible evidence which justifies the verdict the verdict of the jury is not to be disturbed. W.T. RatliffCompany, Inc. v. Purvis, 292 Ala. 171, 178, 291 So.2d 289
(1974).
Appellants contend that the trial court erred in refusing to give appellants' charge no. 1 to the jury which reads:
 "1. Where an agent's authority to sell lands upon certain terms is revoked, and thereafter, the owners, in good faith, sell the lands upon terms less favorable to themselves, to one who had declined to purchase from the agent, such agent is not entitled to a commission."
Rule 51, ARCP provides in relevant part:
 "* * * The refusal of a requested, written instruction, although a correct statement of the law, shall not be cause for reversal on appeal if it appears that the same rule of law was substantially and fairly given to the jury in the court's oral charge or in charges given at the request of the parties. . . ."
Even assuming that appellants' charge was proper, we find no reversible error in refusing the charge in light of the trial court's oral charge. Alabama Power Company v. Tatum, 293 Ala. 500, 306 So.2d 251 (1975).
The judgment of the trial court is affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, ALMON and BEATTY, JJ., concur.