ADAMS, Justice.
This is an appeal from a judgment of the Circuit Court of Autauga County awarding the plaintiff, Jack L. Crawford, Jr., $10,-859.00 against defendants J.W. Robbins and Becky W. Moses. Crawford, a real estate broker in Prattville, Alabama, sued the defendants for breach of contract and fraud and bad faith, claiming both compensatory and exemplary damages.
The issues raised on this appeal are as follows:
1. Did the trial court correctly apply the law to the facts in awarding a judgment to Crawford?
2. Did the trial court properly award punitive damages?
We answer the questions favorably to the appellee, and affirm the decision of the trial court.
The facts of this case are as follows:
Crawford was employed by Robbins under a multiple listing service contract, dated August 15, 1981, to locate a buyer for a house owned by Robbins. The initial term of the listing agreement was ninety days, from August 15, 1981, through November 14, 1981, with a sixty-day continuation clause that expired at midnight, January 13, 1982. The continuation clause provided for payment of the 6% commission to Crawford if an agreement to sell the property were negotiated during the continuation period with a person to whom Crawford had “introduced, offered, or submitted” the property during the initial ninety-day listing period.
Becky Moses, having been informed by her husband, Bill Moses, that the Robbins house was for sale, visited the house, saw plaintiff’s sign, and decided to call the plaintiff. After having looked at the house and discussed it with plaintiff’s agent, she signed an offer to purchase the property, dated October 13,1981, for her husband and herself for $122,650.00. The offer specified that “[t]his sale is subject to the sale of Purchaser’s home ... by 12-1-81 with 24-hour 1st right of refusal.”
Robbins accepted the offer to purchase on the same day it was signed. The Moseses had their property listed for sale during the pendency of the contingent sale contract, but were unable to find a purchaser before the December 1st deadline had passed.
During the pendency of the Moses-Robbins contract, Grady Ward, the father of Becky Moses, having been told by her that the Robbins house was for sale, contacted Robbins and negotiated a sale of the property, allegedly with the understanding that he could take possession when Robbins finished a new house then under construction. In addition, Ward gave Robbins a hold-harmless agreement obligating Ward to pay any realtor’s commission found to be due under a listing agreement entered into by Robbins, so that Robbins would net $115,-000.00 on the sale.
*761 On January 15, 1982, the date allegedly selected by Robbins for the closing with Ward, Robbins sold his house to the Moses-es, who claim to have persuaded Ward to allow them to complete the sale in his place. The Moseses claim that they were financially able to undertake the purchase from Robbins only because they had found a buyer for their home the day before the scheduled closing with Ward, and had arranged for the closing for their property earlier that same day.
Robbins asserts that he knew nothing of the Moseses’ intention to purchase under the terms of his contract with Ward until the time of the closing on January 15. In any event, on the 15th of January, Robbins conveyed the property to the Moseses. He required them to enter into a hold-harmless agreement identical to the one that Ward had signed.
Crawford learned of the sale to the Mo-seses, and demanded a commission of 6%. Robbins denied his request. Consequently, Crawford brought this action to recover actual damages in the amount of $7,359.00 and punitive damages in the amount of $100,000.00 for fraud and deceit.
Both the appellants and the appellee rely on this court’s decision in the case of Foote v. Moore, 342 So.2d 906 (Ala.1977). In Foote v. Moore, this court held that the oral charge of the trial court adequately stated the law to be applied where a real estate broker seeks a commission under a contract to procure a purchaser for property. The trial court’s oral charge read in pertinent part:
“A broker who procures a prospect who is ready, willing and able to buy under the terms of the contract during the existence of the contract, is entitled to his commission, although the sale may not have been concluded during the term of the contract. However, the seller is not bound forever by the contract. And unless the broker has procured a purchaser who is ready, willing and able to buy under the terms of the contract and during the existence of the contract, or unless the sellers were guilty of bad faith or guilty of fraud in their subsequent negotiations with the broker’s prospect, the broker would not be able to recover.”
342 So.2d at 909. (Emphasis added.)
The evidence was in considerable conflict as to whether there were any subsequent negotiations directly between Robbins and the Moseses. At one point, Robbins testified that sometime prior to the 15th of January, he had contacted Bill Moses and discussed the closing with him, contrary to his latter assertion that he had not spoken with either of the Moseses after they had informed him that they would be unable to complete the purchase of the property by December 1, 1981, as specified in their contingent sale contract. In addition, Ward testified that he did not receive word of the closing from Robbins directly, but through Becky Moses.
There is also disagreement as to whether the Moseses had found a purchaser for their house, making it financially possible for them to purchase Robbins’s property, prior to the expiration of the continuation period of the multiple listing agreement on January 13, 1982. Becky Moses testified that she and her husband had reached an agreement with the purchasers of their house on the 13th of January. However, Ward testified that his daughter and son-in-law told him sometime after Christmas that they had a buyer who had put up a binder. He further testified that he was sure that it was sometime in January, prior to the scheduled closing.
Though both the buyers and the seller testified that they did not agree to complete the sale transacted on January 15, 1981, prior to that date, in order to defraud Crawford of his commission, we think that it was proper for the trial court to regard such testimony with a jaundiced eye in view of the evidence of the relations of the parties to the sale (including the fact that Robbins now works for Bill Moses), of Bill Moses’s refusal to purchase the property at the price agreed to by his wife, which was approximately equal to the price that he *762 eventually paid plus Crawford’s commission, because he knew that Robbins had been asking a lower price, and the other evidence discussed above. As this court said in the case of Dancy v. Baker, 206 Ala. 236, 240, 89 So. 590, 593 (1921), which also was an action brought by a real estate broker to recover his commission:
Where the evidence is in conflict, or may support an inference of fraud or bad faith, that issue is, of course, to be submitted to the jury.
After a thorough review of the record, we think that the evidence in this case clearly supports»an inference of fraud, and was properly considered by the trier-of-faet, namely, the trial judge. We cannot say that his decision was palpably wrong, or without supporting evidence.
We now turn to a consideration of appellant’s argument that the trial judge’s award of exemplary damages was improper in this case. In light of the evidence considered above, we cannot say that the trial judge was incorrect in concluding that the parties to the sale intended to defraud the broker of his commission by tacitly agreeing to the conveyance during the continuation period, for which a fee would be owed .under the terms of the multiple listing agreement. As such, we think his award of exemplary damages is not improper. See generally, C. Gamble and D. Corley, Alabama Law of Damages, § 36-22 (1982).
Lastly, the appellee argues, in brief, that the trial court’s final order against “the defendants” implicitly vacated the previous dismissal of defendant Bill Moses at the close of plaintiff’s case. We disagree. The “directed verdict” in this non-jury case operates as an adjudication of the merits pursuant to Rule 41(b), A.R.Civ.P. Greene v. Jones, 377 So.2d 947, 949 n. 1 (Ala.1979). Insofar as the appellee has not appealed from the dismissal, we think the final judgment of the trial court must be regarded as applicable only to defendants Becky Moses and J.W. Robbins.
For the foregoing reasons, we affirm the decision of the trial court.
AFFIRMED.
TORBERT, C.J., and FAULKNER, JONES and ALMON, JJ., concur.