STEAGALL, Justice.
Plaintiff, Wayne B. Jennings, appeals from a summary judgment entered by the trial court in favor of the defendants, Sugar Sands, II, LTD.; Bonhomme Equities, Inc.; Perdido Key Associates, Ltd.;[1] Perdi-do Associates, Inc.; Broadmoor Group; Interim Land Company; Nomen Consulting Company, Inc.; Perdido Key Properties; and certain fictitiously named defendants in an action alleging breach of contract.
Jennings, doing business as Jennings Real Estate, is a real estate broker in Gulf Shores. He acquired knowledge that a Hilton hotel was being planned for construction at Perdido Key and that Joseph Mor-rissey, the sole owner of the various entities in ownership of the hotel project and land to be developed, was seeking to sell all or part of the project. Jennings obtained a feasibility study from Richard L. Niebling, Morrissey’s representative, and they discussed the project. John Wynn, an attorney-business partner of Jennings visiting Gulf Shores at that time, represented Jim Meadlock, who was seeking to buy a large hotel. In June 1985, Jennings telephoned Niebling and arranged a meeting that night between Niebling and Wynn, at which time Niebling and Wynn were introduced and discussed the project. Wynn, however, did not divulge the name of his client at that meeting. Several months subsequent to that meeting, Morrissey and Meadlock formed Perdido Key Associates, Ltd., a joint venture, to facilitate the development of a hotel on Perdido Key. Jennings sought, but failed, to obtain a commission for his part in the events leading to the culmination of the deal between Morrissey and Meadlock.
On November 24, 1986, Jennings sued Sugar Sands, II, LTD.; Bonhomme Equi *69 ties, Inc.; Perdido Key Associates, Ltd.; Perdido Associates, Inc.; and certain fictitiously named defendants, alleging breach of an implied oral contract to employ Jennings as a real estate broker to find a purchaser for a Hilton hotel site and to pay a reasonable broker’s commission to Jennings for that sale. Jennings later filed an amended complaint, adding Broadmoor Group; Interim Land Company; Nomen Consulting Company, Inc.; Perdido Key Associates, Ltd.;[2] and Perdido Key Properties as parties defendant to the action. He sought damages in the amount of $1,383,831, plus interest and costs. All defendants filed a motion for summary judgment, which was granted. Jennings now appeals from the summary judgment in favor of the defendants.
This Court has previously stated regarding summary judgments:
“ ‘On appeal, we look at the materials presented to the trial court and determine for ourselves, in light of the scintilla rule, whether there were any triable issues of fact due to be decided by the jury.’
“If there is evidence supporting plaintiff’s position, entry of summary judgment is inappropriate and [the judgment] is due to be reversed.”
McAlister v. Deatherage, 523 So.2d 387, 388 (Ala.1988) (citations omitted). (The present case was filed prior to the adoption of the “substantial evidence rule.” See § 12-21-12, Code 1975.)
Jennings contends that the following testimony establishes the existence of a question of fact as to whether there was an implied contract for payment to Jennings of a reasonable broker’s commission if the deal was consummated:
“A. [Jennings:] Then Dick and his friend sat down, John sat down and I sat down. And I looked him right in the eye and I said ...
“Q. [Defendants’ attorney:] Looked who right in the eye?
“A. Dick Niebling. And I said I want you to understand that I want a reasonable commission if this deal is consummated.
“Q. What did he say to you?
“A. I can’t remember exactly what he said but it was under — it was an implied point and then I said John, go ahead — it was an implied acceptance and I turned around and I said John, go ahead and tell him — tell him about your client. And I’ve been asked — I don’t know exactly what Dick said, but in real estate business you — you understand that, you don’t — he didn’t come — he come up here to sell the property and I — I just said I want a reasonable commission. Nothing was ever said about what a reasonable commission was. We’re talking about thirty-three million dollars and I don’t think — I knew it was quite involved and then they got into conversation and then....”
Niebling contends that he never promised to pay Jennings a commission and that he expressly stated to Jennings during the telephone conversation arranging the introductory meeting with Wynn, “[I]f you’re looking for money you better look to your other people.” Niebling’s testimony was not refuted by Jennings. Wynn testified as follows concerning a conversation in late August between him, Meadlock, Morrissey, and Niebling about a commission:
“Q. So, in that conversation was it Mr. Meadlock who said he would pay, himself, the ten thousand dollars to Mr. Jennings?
“A. Right. He had asked me — Nie-bling had asked me what — what is my relationship to Wayne? And I said that Wayne was a partner of mine in a condominium property down in Gulf Shores and that’s how I knew him. And I felt like that I was doing him a favor by mentioning it at the meeting because he had never indicated to me he had any agreement to get a commission and as far as I knew he didn’t.
“Q. But, at that time Mr. Niebling said that he would not — was not going to pay a commission?
*70 “A. Well, he said he had no agreement or understanding with him at all about it and he didn’t feel obligated to pay him a commission, and that’s when I spoke up and said that Wayne asked me when I had this meeting with the two of you to see what I could do for him. And that’s when I told that any — that Wayne had told me any little thing would be satisfactory with him. And they asked me to make a judgment on what would be satisfactory to Wayne and I said ten thousand dollars in view of the fact that all he did was introduce us. I thought that was more than adequate.”
After a thorough review of the depositions and pleadings, we cannot find a scintilla of evidence to create any triable issues of fact to be decided by a jury. The evidence presented does not provide the scintilla necessary to support Jennings’s argument that an implied contract was created in June 1985 between him and the defendants.
Neither can Jennings recover under a quantum meruit theory.
“ ‘ “A broker who procures a prospect who is ready, willing and able to buy under the terms of the contract during the existence of the contract, is entitled to his commission, although the sale may not have been concluded during the term of the contract. However, the seller is not bound forever by the contract. And unless the broker has procured a purchaser who is ready, willing and able to buy under the terms of the contract and during the existence of the contract, or unless the sellers were guilty of bad faith or guilty of fraud in their subsequent negotiations with the broker’s prospect, the broker would not be able to recover.” ’ ”
Vulcan Oil Co., Inc. v. Gorman, 434 So.2d 760, 762 (Ala.1983) (quoting Foote v. Moore, 342 So.2d 906 (Ala.1977). It is undisputed that at the time Jennings introduced Niebling and Wynn in June 1985, the buyer, Meadlock, was not ready, willing, and able to buy under any terms. Therefore, there was not a scintilla of evidence presented to indicate that Jennings was the “procuring cause” of the sale.
Therefore, we affirm the judgment.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ALMON and ADAMS, JJ., concur.

. The original complaint named as a defendant "Perdido Key Associates, Ltd., a Missouri Limited Partnership”; an amended complaint named as an additional defendant "Perdido Key Associates, LTD., a limited partnership composed of Gulfview Associates and Perdido Associates, Inc.”

. See footnote 1.