## LINNIE CLARK *v.* GAY T. WALTON BANKS.

## LINWOOD L. CLARK *v.* GAY T. WALTON BANKS.

[Nos. 16, 17, October Term, 1929.]

*Decided January 6th, 1930.*

26

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*J. Britain Winter* and *J. Cookman Boyd,* for the appellants.

*Philander B. Briscoe,* with whom were *Briscoe & Jones* on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

Linwood L. Clark, an attorney at law, and his wife, Linnie Clark, were the owners of a valuable improved tract of land upon which there was a large mortgage. Some time in 1926 Gay T. Walton Banks undertook to sell their property, which was in Anne Arundel County. At the beginning Mrs. Banks, a widow, did not have a license as a real estate broker, but she obtained one on July 19th, 1927, before the sale was made, for which she later recovered a joint judgment against the owners in the sum of $3,000 for her commissions. Separate appeals have been taken, and there are nine exceptions on the record. The last exception is to the ruling on the prayers, and the first eight arise on questions of evidence. The plaintiff submitted no prayer, but Mrs. Clark offered seven, Mr. Clark, six, and the court wrote one. The first three prayers of Mrs. Clark's and the first two of Mr. Clark's were demurrers to the evidence, and were rejected. The remaining four prayers of Mrs. Clark's were refused on the ground that the court's instruction and her husband's fifth and sixth prayers, which were granted as modified by the court, adequately presented the case of both to the jury. Mr. Clark had no fourth prayer and his third and fifth prayers were rejected.

There was legally sufficient evidence to support the plaintiff's theory that she had been employed by the defendants to sell their tract of land for $60,000 upon a commission of five per centum of the purchase price; and that, through her efforts, she produced for the owners a purchaser, who, as a result of her services and introduction, bought of the owners the property for sale and paid to them their desired price. The defendants entered into the contract of sale on the night of July 19th, 1927, with a certain James J. Walsh, and on September 1st, 1927, they conveyed the land to him. There is no question that Walsh was a cipher in the transaction. He was chosen because of his financial irresponsibility, and he was a mere conduit to the real purchaser or his assignee or nominee, so that in the mesne conveyances between the vendors' deed and the vesting of the title in the actual purchaser, his assignee or nominee, Walsh would assume all the personal liability which would be imposed by the mesne conveyances. In this way the real buyer sought to escape some of the pecuniary obligations of a vendee and owner. Accordingly, the vendors conveyed the tract to Walsh, who executed a mortgage to the vendors for the amount due on the purchase money; and then conveyed the property to the Horn Point Land Company, a corporation formed to take the title and develop the property.

The testimony on the part of the plaintiff is that McLean, who was introduced to the owners by plaintiff, was the real buyer of the property, and Walsh his agent, and so, if this were true, whatever his agent Walsh did by way of grant was by his principal's directions and, therefore, did not prejudice the plaintiff's cause of action against the owners. *Qui facit per alium, facit, per se.* On this theory of the evidence the plaintiff had found a purchaser, who bought the property, and had paid or secured to be paid the purchase money, and she had earned her compensation. *Riggs v. Turnbull,* 105 Md. 135, 148-152; *Kimberly v. Henderson and Lupton,* 29 Md. 512, 515; *Ebling v. Brewer,* 154 Md. 290, 299-300; *Singer Construction Co. v. Goldsborough,* 147

Md. 628, 637, 638; *Taft v. Bayne,* 140 Md. 683, 695; *Coppage v. Howard,* 127 Md. 512, 520-523; *Slagle v. Russell,* 114 Md. 418, 430-433; *Balto. Car Wheel Co. v. Clark,* 131 Md. 513, 515, 516; *Buckholz v. Gorsuch,* 144 Md. 62, 65; *Warshawsky v. Traub,* 156 Md. 597, 603; *Mechem on Agency* (2nd Ed.), secs. 2435, 2436.

The defendants, however, offered conflicting testimony which, if believed, tended to show that Walsh was the agent of the McLean Company, Inc., which was engaged in the real estate and brokerage business in Washington; that the company, in consideration of the plaintiff's promise to divide the commissions, had been employed by the plaintiff to obtain a buyer for the property in question; and that Otto B. McLean was not the purchaser, but the president of the McLean Company, Inc., and as a representative of that company had sold the property to three residents of Washington, who subsequently formed the corporation called the Horn Point Land Company to take title and to develop the property. The written contract of sale is drawn in accordance with defendants' theory of the facts, and provided for the payment by the defendants to the McLean Company, Inc., of real estate brokerage commissions of five per centum on the purchase price of $60,000. This contract of sale was prepared and produced by McLean on the night of July 19th, when he, Mrs. Banks, and Mr. Clark met to conclude the contract of sale. Although the testimony on the part of the defendants does not show that the contract was read by or to the plaintiff, yet their testimony tends to establish that its provisions, and particularly the one providing for the payment of the commissions, were fully discussed in the presence and hearing of the plaintiff, who is represented by their testimony as having made no objection nor suggestion, but as having, by her conduct, acquiesced in the stipulations, which were not inconsistent with an agreement between the two agents to divide the commissions. If this statement be accepted as proved, the plaintiff would have no cause of

action against the defendants, but would be restricted to an assertion of her claim against the McLean Company, Inc.

The transaction was the plaintiff's first sale, and, while she admits being present, she testified that, not having her eyeglasses, she could not read the contract, which she said had not been read to her, nor its contents or purport been explained to her or made known or discussed in her presence, nor had she heard or been told anything which would have put her on notice or informed her of the tenor of the contract, which had never been submitted to her but which she understood to be a contract of sale between the owners as vendors and Mr. McLean as the vendee. The witness is positive that McLean represented himself and was accepted as the real purchaser, and that she did not request the McLean Company, Inc., to find a buyer, nor did she ever agree with any one to divide the commissions or look to the McLean Company, Inc., for her compensation. *Mechem on Agency* (2nd Ed.), secs. 2457, 2458.

The conflict of evidence left its resolution for the jury, and, therefore, the first three prayers of the wife and the first two prayers of the husband asking that the case be taken from the jury were rightly rejected. See *Warshawsky v. Traub,* 156 Md. 597, 602, 603, 604.

There was no error in the rejection of the fourth, fifth, sixth and seventh prayers of the wife, and the third prayer of the husband. Aside from any other defects, every one of these prayers had a common vice. The husband and wife held their interest in the land as tenants by the entireties, and the evidence tended to show that both husband and wife employed the plaintiff as their broker to secure a purchaser, and that, whatever was the liability to the plaintiff for brokerage commissions for procuring the sale, it was a joint and not several liability of the husband and wife, yet the prayers designated proceeded upon the theory that the contract was a several one and that the jury could find a verdict for or against either the wife or the husband separately. The prayers, therefore, disregarded the pleadings and were mis-

leading in that they ignored the evidence from which the jury could have found a joint undertaking by the two defendants to pay commissions to the plaintiff, and so a joint verdict against both defendants. *Atlas Realty Co. v. Galt,* 153 Md. 586, 595-596.

The husband's fifth and sixth prayers, which were granted as modified, were open to a similar objection, but they were granted in connection with the court's instruction which, in a measure, corrected the defect by directing that, if the jury should find for the plaintiff under all the evidence and the instructions, their verdict should be against both defendants, provided the jury should further find that the wife as part owner knew and assented to the employment of the plaintiff to sell the property.

By the husband's fifth and sixth prayers the pleader intended to present the defense of an estoppel *in pais,* but a difficulty with each prayer is that it undesignedly includes two conflicting theories. The first is of nonliability because the plaintiff did not procure the purchaser; and the second implicitly assumes a right of action but denies a recovery to the plaintiff, because her conduct constituted an estoppel *in pais.* The court did not modify the language of either prayer, whereby it submitted, however inadequately, for the jury to find that the purchaser was not procured by the plaintiff. The changes made were additions to the concluding parts in which the defense of an estoppel *in pais* is set up. The slight verbal additions to the husband's sixth prayer were in aid of clarity and precision. In fact, the defendants offer no criticism except to the insertion of the words italicized in the clause: "but that the said plaintiff remained quiet and made no claim whatever for her share of the said commission from Clark *and that she acquiesced."* Instead of submitting a legal proposition to the jury, as the defendants assert, the phrase introduced the necessary element of a silent but conscious consent on the part of the plaintiff, as where one acquiesces in an opinion, argument, or arrangement. *Century Dictionary,* "Acquiesce," par. 2.

The fifth prayer of the defendants denied a recovery if the jury should find that the husband promised O. B. McLean to pay him full commissions if he procured a purchaser, and that the plaintiff was present at this promise and at the negotiations which led up to the sale of the property to a purchaser produced by McLean, but remained quiet and permitted the transaction to be closed without asserting any claim to commission. The theory intended to be stated by this prayer is that, notwithstanding the right of the plaintiff to the commissions for the sale, these facts estop her. The pleader rests the estoppel *in pais* on the presence, silence, and inaction of the plaintiff. These elements are too narrow a foundation, since the trinity are without legal significance if they are not coupled with a knowledge, either actual or constructive, of the plaintiff of what was happening. *Herman on Estoppel,* sec. 1062. The duty to speak or to act opportunely does not spring merely from a presence at negotiations, unless there be a knowledge of something occurring which, with respect to others, makes it a duty of the party to act or to speak. In the instant case the plaintiff had testified that, although present, nothing had occurred in the negotiations which would have given her information or notice that the commissions would not be paid to her. The defendants' testimony was to the contrary, and that her actions justified them in assuming that the plaintiff would look to McLean for her commissions out of those agreed by the defendants to be paid to McLean Company, Inc. Under these circumstances, the court supplied a patent defect of the prayer by incorporating in the prayer the indispensable element of knowledge on the part of the plaintiff, by concluding the prayer with this clause: "provided the jury believe from the evidence that Linwood L. Clark was justified from the plaintiff's conduct and actions and her knowledge of the terms of the contract of sale, in assuming that plaintiff looked to McLean and not to him for commissions, before paying all commissions to McLean." In other words, the party estopped must act with knowledge, and the reliance of the one who asserts the estop-

pel upon the silence and inaction of the party to be estopped must be reasonable, when measured by the exercise of reasonable prudence, and must not be because the one claiming the estoppel closes his mind to cautionary or inconsistent circumstances.

The court does not express an approval of the husband's fifth and sixth prayers as prepared or modified; but the defendants have no ground for complaint, because, when read in connection with the trial court's instructions, these granted prayers submit to the jury the defendants' own theory of the case in a form substantially of their choice. While the court's instruction is inartificially drawn, it made the recovery against both of the defendants depend upon the jury finding, (a) the plaintiff's employment to sell the property and (b) the knowledge by the wife as part owner of this employment to sell and her assent to such employment; and (c) a verdict for the plaintiff under all the instructions and evidence. The employment of the plaintiff was a contract which bound the defendant and her husband through their mutual assent, and so, if with knowledge of the terms of the employment she likewise assented, she became bound with her husband as a party to the contract. The case is distinguishable from *Groscup v. Downey,* 105 Md. 273, where the husband was simply an agent, the wife being the owner, and the broker a subagent of the husband, and not as here the agent of both tenants by the entireties by mutual assent. In *Kvedera v. Mondravitzky,* 145 Md. 260, 266, the facts were different and the prayer was held bad because it did not leave to the jury to find if the husband had executed the contract as the duly authorized agent of his wife, a tenant by the entireties, or if she had subsequently adopted or ratified it as the contract of herself and husband. Under all the circumstances, the court's instruction in the appeal at bar was not of a nature to justify a reversal for its informality. In requiring the jury to find that the wife "as part owner knew and assented to plaintiff's employment to sell the property," the court used the very language of contract in the term "assented to."

*Chesapeake & O. Canal Co. v. Balto. & O. R. Co.,* 4 G. & J. 1, 130; *Stale v. Balto. & O. R. Co.,* 12 G. & J. 399, 433; *Jackson v. Gallway,* 5 Bing. N. C. 71, 75, 132 Eng. Rep. 1031, 1033.

The defendants do not mention in their brief the last four exceptions to the court's rulings on the testimony, and there is no occasion to state them, as they were either unimportant or correct. The first exception is to the refusal to let the defendants ask one of plaintiff's witnesses if he knew for whom Walsh, the grantee, "was acting as a straw man," and if anything was said about that. At the then stage of the trial no testimony had been given that Walsh was a straw man; and the first question was objectionable because it assumed as a fact what had not been proven. The second part of the question depended upon the first and partook of its error. The object of the interrogatory was stated to have been to show who actually exercised the powers of ownership and paid the interest on the mortgage debt after the deed to Walsh. All this information was later obtained and is undisputed. Under the second and third exceptions the plaintiff was permitted to describe what steps she took and what efforts she made to obtain a purchaser. What she did to procure McLean as a purchaser was relevant and material, but what the defendants point out as objectionable is her further statement that she had solicited about two dozen people in addition to others whose names she had given, and that she spoke to every one with whom she came in contact, if she believed them eligible purchasers. This testimony was not material, as the case developed, but its admission was too unimportant to constitute serious error.

The fourth bill of exception is so involved that it does not appear what ruling is presented. The contention is that the plaintiff was not permitted to be asked if she had not admitted, in March, 1928, at the office of her attorney, to Mr. Clark, that the plaintiff and McLean had a conversation in which the splitting of the commission for the sale of the

property was discussed. But, apparently, the witness answered this interrogatory, because, after an intervening discussion by court and counsel was at an end, without any farther question on this point, she narrated a conversation in which she denied McLean's claim to a division of the commissions. In any event, Mr. Clark later testified fully in reference to various statements made by the plaintiff in his presence about the commissions and a disagreement she had with McLean in reference to them. So the defendants do not appear to have been injured.

The granted prayers were, without essential change, the productions of the defendants, who can not complain if the court accepted them as fundamentally sound. Finding no reversible error in the rulings on the testimony and on the other prayers of the defendants, including the instruction given by the court, the judgment below must be affirmed.

*Judgment affirmed, with costs.*