## REH ET UX. *v.* BRADLEY

[No. 56, October Term, 1956.]

*Decided December 11, 1956.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*Edgar A. Wren,* with whom was *W. Gwynn Gardiner* on the brief, for the appellants.

*Jerrold V. Powers,* with whom were *Lansdale G. Sasscer, Jr.,* and *Sasscer, Clagett & Powers* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a judgment for the plaintiff entered upon a jury's verdict for $3,500 in an action to recover a broker's commission. The appellants contend that the trial court erred in declining to enter a directed verdict for the defendants, in its instructions to the jury, and in sustaining objections to certain testimony.

Sometime prior to March, 1954, the appellants had given an oral option for a period of one year to one Joseph C. Pacheo for the purchase of their farm near Clinton, Prince George's County. This was not exercised, and on March 8, 1954, they wrote a letter to the appellee, which they both signed, authorizing him to sell the residue of the farm at a price of $80,000 upon a down payment of 25% in cash and the balance in not over seven years. The commission was to be 5%. In an earlier letter Mr. Reh had stated that, if Mr. Pacheo did not exercise his option, they would give Mr. Bradley an exclusive listing for six months.

In August, 1954, the appellee submitted an offer of $60,000, which was declined, but Mr. Reh wrote the appellee that if

the offer was increased to $70,000, he believed his wife would agree to it. In September, the appellee submitted two contracts to purchase in the sum of $70,000, one signed by Messrs. Kelsey and Donohoe and another signed by Joseph C. Pacheo, president, and Howard S. Westin, vice president, of Suburban Recreation, Inc., a newly formed corporation. Each contract specified a down payment of $1,000, and a cash settlement of $15,000, within sixty days from the date of execution. At that time Mrs. Reh was in Colorado and Mr. Reh in Europe. In a letter transmitting the contract to Mrs. Reh, Mr. Bradley explained that the corporation was selling stock in the enterprise, and stated that he was informed that ten stockholders would personally guarantee the down payment on the property. He also stated that he had in hand a check from the corporation for $1,000.

Mrs. Reh replied acknowledging receipt of the contracts and stating that she would see her lawyer about them, then mail them to her husband. "You should hear from him in about a week." She did submit the contracts to her lawyer in Colorado, who disapproved the Kelsey-Donohoe one and raised certain questions in connection with the other contract as to the authority of the corporation to purchase land and the authority of the officers to bind it. Mr. Bradley received a letter from Mr. Reh dated September 28, 1954, from Rome, Italy, stating that he had received the contracts and that the Suburban contract "sounds O. K. and I would sign one, if they meet stipulations that our attorney suggests, and if he approves. We might also have to have Loveless Jr. look over the contract first." Mr. Reh returned from Europe and he and Mrs. Reh met with Mr. Bradley on October 25. They asked that the secretary of the corporation sign the contract, and this was done. Mr. Loveless was also consulted and gave his approval so far as the charter powers were concerned. According to Mr. Bradley, no other objections to the contract were raised, but the Rehs never signed it. On November 11, 1954, Mrs. Reh telephoned him, and stated that because he had submitted another contract for the purchase of the property along with the Suburban contract, she had been advised not to sign either. Mr. Bradley admitted

that Mrs. Reh had never expressly agreed to the price of $70,000. However, it is conceded that after the exclusive listing to Mr. Bradley had expired, in March, 1955, they began to negotiate with Mr. Pacheo individually and subsequently sold the property to him at a price of $70,000. Mr. Pacheo testified that the corporation, Suburban Recreation, Inc., was never in a financial position to have met the down payment on the contract. He denied any knowledge of a guarantee by ten stockholders to meet the down payment. He testified that the directors thought they could sell the stock, but this was never done. The deposit was returned in November, 1954, when it was learned that the contract would not be accepted by Mr. and Mrs. Reh, and no further efforts to raise funds for the corporation were made.

The grounds of the motion for directed verdict, offered at the close of the whole case, were that there was no evidence that the appellants agreed to a reduction in price, and that there was no showing that the prospective purchaser was financially able to complete the purchase. As to the first point, Mr. Reh intimated in August, 1954, that he would agree to a price of $70,000, when he wrote that he and Mrs. Reh had carefully considered the offer of $60,000, and that if the price was raised to $70,000 "he believed" his wife would agree to it. In his letter from Rome, he definitely stated that he would sign the Suburban contract, in which the price of $70,000 was set out, if certain conditions as to form were met, and these conditions were met. Mr. Reh therefore assented to the reduction, according to the undisputed evidence. There is no direct evidence that Mrs. Reh assented, but we think there was evidence from which the jury might properly find that she did. She did not object to the price set out in the contract she received, but on the contrary, consulted her lawyer and forwarded the contract to her husband together with a memorandum from the lawyer approving it, except as to form. Again, she and her husband met Mr. Bradley on October 25, 1954, and she raised no objection as to the price. Nor did she object to the price on November 11, 1954, when she raised a question as to the submission of two contracts, on which she based her refusal to sign. It is conceded that

the reason she assigned did not amount to a legal justification. Again, she agreed to the subsequent sale at a price of $70,000. The case of *Aler v. Plowman,* 190 Md. 631, is distinguishable on the facts, and the rule laid down in *Clark v. Banks,* 158 Md. 24, 32, would seem to be applicable.

On the point of ability to pay, it is significant that no question of Suburban's ability to raise the money for the down payment was raised by the appellants prior to Mrs. Reh's refusal to sign on another ground. Under such circumstances, the burden was upon the appellants to show the inability of the purchaser to perform, and not upon the broker. *Horn v. Seth,* 201 Md. 589, 594; *Stokes v. Wolf,* 137 Md. 393, 411. While it is clear from Mr. Pacheo's testimony that the money for the down payment was never raised, it is also clear that the directors' efforts were discontinued when the appellants refused to sign the contract, so that their ability to raise the money within sixty days was never put to the test. His testimony was also somewhat weakened by the fact that he was personally able to purchase the property at the same price a few months after the expiration of the exclusive listing with the plaintiff, of which he was fully aware. On both points, we think there was legally sufficient evidence to submit to the jury on the issue as to whether the broker had produced a purchaser ready, willing and able to pay. Cf. *Steele v. Seth,* 211 Md. 323. It is clear that a broker may be entitled to commissions where a sale is defeated by the owners' unwarranted refusal to convey. *Horn v. Seth, supra,* p. 594, and cases cited.

As to the alleged errors in the instructions to the jury, it is sufficient to say that no objections were made to the charge. On the contrary, counsel for the appellants stated: "I have no objections or instructions." Nor is there any merit in the contentions as to evidence. The appellants say that the court erred in sustaining objections to two questions, one put to Mrs. Reh, as to any other reasons, besides the ones stated, given to her by her Colorado attorney "for rejecting these contracts." In view of the clear evidence that she was willing to accept the contract if the objections raised by the Colorado attorney and reported to Bradley were met, the exclusion of

this evidence could scarcely have been prejudicial, for evidently any other objections to the contract which he may have raised did not affect her decision. The question was also objectionable as a matter of form, since the Colorado lawyer did not reject the contract, but approved it subject to conditions. The other question was also put to Mrs. Reh, as to whether the fact that Mr. Bradley did not furnish the names of the persons who were supposed to guarantee the Suburban contract, although she admitted that she never requested the names, entered into her "considerations in acting upon this contract". She had already testified as to the only reason she gave Mr. Bradley for not signing the contract, and it is difficult to see what bearing the question could have on the case, for there is no evidence that she relied on his statement, or made any inquiry of him concerning it. In any event, she was permitted to testify that when she told Mr. Pacheo they were not going to sign, he told her "he did not know where they were going to get the money to pay for it, because they did not have the money". The trial court ruled that the appellants might put on any proof they had as to the inability of the purchaser to perform, and the exclusion of the question objected to was not prejudicial.

*Judgment affirmed, with costs.*