ZETLIN *v.* SCHER

[No. 194, September Term, 1965.]

*Decided March 8, 1966.*

The cause was argued before HAMMOND, HORNEY, MARBURY, BARNES and McWILLIAMS, JJ.

*Joseph L. Johnson,* with whom were *George W. White, Jr.,* and *Buckmaster, White, Mindel & Clarke* on the brief, for the appellant.

*Richard H. James,* with whom was *Reuben Shiling* on the brief, for the appellee.

MARBURY, J., delivered the opinion of the Court.

On October 20, 1961, Freda Scher, a licensed real estate broker, instituted suit against Henry Zetlin to collect a commission which she claimed to be due and owing her as the result of her successful efforts in procuring a buyer to purchase from Zetlin a parcel of real estate improved by premises No. 3505 Clarks Lane in Baltimore City. Trial was held on April 24, 1965, before Judge Cullen, sitting without a jury, and a verdict and judgment was entered in Scher's favor in the amount of $1590 (6% of the property's sale price of $26,500).[1] At issue on this appeal is whether there was evidence from which the trial judge could have properly found that the person who signed the contract of sale as buyer (with whom Scher

---

1. In accordance with commissions established by the Real Estate Board of Baltimore City.

admittedly had no pre-sale contact) was actually an agent or straw party for the real purchaser, Meadowbrook Construction Company, of which David O'Dunne was the president. It was uncontroverted that O'Dunne became interested in buying the property solely through the efforts of plaintiff-appellee Scher.

Late in 1960 the appellee was asked by Zetlin to list his Clarks Lane property for sale, orally advising her that he wished to receive a price of between $26,000 and $27,000. A written listing contract was not entered into and Scher was later to testify that Zetlin never discussed a sales commission with her, while the latter testified that he offered her a $500 commission.

Pursuant to this oral understanding Scher testified that she immediately posted a for sale sign on the property disclosing herself as the agent for the property's sale and ran advertisements to the same effect. After producing two prospective purchasers whose offers did not meet Zetlin's asking price, Scher succeeded in interesting David O'Dunne, a Baltimore builder, in the purchase of the property.

At the trial it was undisputed that David O'Dunne was introduced to Zetlin by the plaintiff Scher, and that the immediate result of this introduction was some discussion between O'Dunne and Zetlin about a possible partnership between the two whereby O'Dunne would build apartment houses on the Zetlin property here involved. According to O'Dunne, hope of a partnership with Zetlin was almost immediately abandoned because of a "question of personalities," and he set out to secure independent financing to purchase the property. O'Dunne, who was called by the plaintiff Scher, testified that he interested a Mrs. McCormack (who did not testify at the trial) in the idea of putting up the $26,500 purchase price for the Clarks Lane property, that he introduced her to Zetlin, and that it was agreed that Mrs. McCormack would put up the money and sign the contract, which she did along with Zetlin and his wife. It was Mr. O'Dunne's testimony that Mrs. McCormack was merely "a gal that had some dough that she wanted to invest and I found her a place to put it. But she had no conception of what was going on." On direct examination O'Dunne testified that Mrs. McCormack held the property only until he made her an officer of the Meadowbrook Construction Corpo-

ration; she then transferred it to the latter corporation, which was still its owner at the date of trial. On cross examination, O'Dunne stated specifically that Mrs. McCormack was "my" agent and that the contract of sale had been submitted through her. He further testified that Mr. Zetlin told him that he did not wish the sale (via McCormack) to be disclosed to Scher, but that he (O'Dunne), nevertheless, informed her of the sale, apparently some time within the thirty day period which elapsed between the contract signing and the date of settlement.

Freda Scher testified that Mr. Zetlin told her, prior to the date of settlement with McCormack, that he was withdrawing the property in question from sale since he was no longer interested in selling it and "just to forget it." Scher further testified that she appeared at the settlement, intending to present her bill for commission, after being advised by O'Dunne as to the time and place thereof, but that O'Dunne and Zetlin both asked her not to hold up the settlement, in exchange for which they assured her that they would settle the commission with her later. She acquiesced in this but no commission from Zetlin had been received as of the day of trial.

Appellant testified that he had been introduced to Mrs. McCormack by O'Dunne and recalled that O'Dunne's words of introduction were as follows: "Look, Mr. Zetlin, I have a lady that wants to buy this piece of property. I think you can make a better deal, myself. Would you accept $26,500?" Except for an opinion, expressed at the conclusion of his direct testimony, that Mrs. McCormack was definitely the purchaser of the property, Zetlin's testimony differs only slightly from that of O'-Dunne and Scher, who preceded him on the witness stand. At no point in the trial was he asked to either affirm or negate the testimony, of the prior two witnesses, to the effect that he had tried to hide the fact of the sale from his broker, Scher, or that he had promised on the date of settlement to settle with her in regard to her commission if she would let the settlement go through.

The appellee, in contending that she "procured a purchaser" within the contemplation of Code (1957), Article 2, Section 17, relies heavily on the case of *Clark v. Banks,* 158 Md. 24, 27, 148 Atl. 238, wherein we recognized that if a purchaser who

is procured by a broker pays or secures the payment of the purchase price, then the broker is entitled to a commission even though the conveyance is made to the purchaser's agent. On the other hand, it is the appellant's position that Mrs. McCormack could not have been an agent of the Meadowbrook Construction Corporation, despite the testimony of the corporation's president that she was, because: (1) her name appears as purchaser on the contract, and (2) Mrs. McCormack put up the original purchase money.

In *Clark,* as here, the name of another appeared on the contract of sale but we nevertheless held that there was sufficient evidence from which the trier of fact could have found that the actual purchaser was one whose name did not appear on the contract. Thus, the mere fact that Mrs. McCormack's name appeared on the contract as the purchaser is of little consequence in a case such as this, and is certainly not dispositive of the question of agency or non-agency.

Likewise the second fact stressed by the appellant, *i.e.,* that Mrs. McCormack put up the purchase money, does not negate the possibility of a principal-agent relationship. Apparently the appellant stresses this fact in order to show that the corporation did not have the necessary control over McCormack to be her principal. Here, control, or the lack of it, can be ascertained by the events which followed as well as those which preceded Mrs. McCormack's signing of the contract of sale. From the testimony of O'Dunne to the effect that Mrs. McCormack did not know what was going on with respect to this particular piece of property, plus the fact that the corporation's president was at her side at both the contract signing and the settlement, plus the fact that she dutifully signed over the property to the corporation subsequently, we think that control was manifested. Moreover, we think it apparent from the facts in this case that Judge Cullen justifiably could have drawn the inference [2] that Mrs. McCormack agreed before the signing of

---

2. He did not state the grounds for decision and, despite the availability of Maryland Rules 564 b 2 and 18 c, neither counsel requested him to do so. As we have said on many previous occasions, when an appeal is contemplated it is appropriate to request the trial judge to dictate a memorandum stating the grounds for his decision, *e.g., Houston v. Lloyd's,* 241 Md. 10, 13, 215 A. 2d 192.

the contract to act primarily for the benefit of the corporation and not with the hope of making a profit by the resale to it. This is significant because: "One who contracts to acquire property from a third person and convey it to another is the agent of the other only if it is agreed that he is to act primarily for the benefit of the other and not for himself." Restatement (Second), Agency 2d § 14 K (1958).

Throughout his testimony the president of Meadowbrook, David O'Dunne, speaks of the corporation and himself interchangeably. But from this testimony, read as a whole, we think that the trial judge could have properly found that the corporation was the purchaser originally procured and not O'Dunne himself. However, even if it be assumed that O'Dunne had intended originally to purchase the Clarks Lane property individually, and then later decided to buy it through the corporation, the appellant would still owe Scher her commission because it is the general rule in this country that a broker's right to a commission is not affected by the fact that the customer procured by him became associated with others who joined with such customer in the purchase of property. 12 Am. Jur. 2d, *Brokers,* Section 191; *Cumberland Sav. & Trust Co. v. Mc-Griff,* 61 Fla. 159, 54 So. 265; *Holton v. Shepard,* 291 Mass. 513, 197 N. E. 460. See also 164 A.L.R. 949-52. *Cf. English v. William George Realty Co.,* (Tex Civ. App.) 117 S. W. 996.

Other jurisdictions have recognized that a property owner is not liable to the broker for the payment of a commission where he acts both in good faith and without knowledge that the ostensible purchaser is the secret representative of the customer procured by the broker. 12 C.J.S., *Brokers,* Section 93 c; *Ritch v. Robertson,* 93 Conn. 459, 106 Atl. 509; *Stone v. Kreis,* 202 Ill. App. 43. Even assuming that this is also the law of this State, the uncontradicted testimony to the effect that Zetlin tried to secrete the facts of the transaction with McCormack from Scher could properly have led the trial judge to find that there was an absence of good faith on Zetlin's part here.

Upon the record before us we can not say that the trial judge was clearly erroneous in concluding that McCormack was the

agent of Meadowbrook and thus Scher had procured the purchaser and was entitled to her commission. Maryland Rule 886 a.

*Judgment affirmed, costs to be paid by the appellant.*