This case involves a question whether a real estate agent procured a buyer for his principal and therefore is entitled to a commission agreed upon by contract.
 FACTS
On February 15, 1983, S.A. Green entered into a written, open, real estate listing agreement[1] with United Farm Agency of Alabama, Inc. The agreement concerned two parcels of real estate owned by Green, his wife, and two daughters: A 9.4-acre tract of land with a house and a 135-acre tract of land. The agreement provided that Green would pay United Farm a sales commission of 10% of the gross sales price of the house and land "when a purchaser is procured through you or your representative." United Farm's agent, Barron Strother, walked over the property, went inside the house, and took notes and pictures in preparation to showing the properties.
On May 10, 1983, Strother took Pete Lott, Lorenza Maulden, Jr., and Dennis Rollins to see the large tract of land and they walked over it. After leaving the property, they passed by the house. Mr. Strother mentioned that United Farm also had the house listed. The next day, Strother sent a property presentation notice to Green advising him that the property[2]
had been shown to Lott and Maulden.[3] The notice requested that "in the event you are contacted by these persons or any other customers we urge you to call us immediately."
Maulden and Rollins had never seen the house or the land before Strother took them to see the property. After their visit to the real estate with Strother, however, Maulden initiated negotiations with Green. Before Maulden contacted Green directly, they had never met, nor was Green acquainted with Rollins. Maulden and Green discussed the price of the property on several occasions. On May 30, 1983, Rollins and Maulden bought the large tract of *Page 120 
land, and, three days later, Maulden bought the smaller parcel with the house. Green never contacted United Farm or Strother about the negotiations with Maulden or the sales of the properties to Maulden and Rollins. By word of mouth, Strother learned of the sales on June 4.
United Farm sued Green, his wife, and daughters (in whose name the legal title was held) in the Pike County Circuit Court to collect the commission allegedly due it as a result of Strother's actions. The trial court, sitting without a jury, ruled that "the evidence did not [establish] to the required measure that the actions of [United Farm] were the efficient and proximate cause of the offer and acceptance to purchase the property on the terms fixed by [Green]." Judgment was entered for the Sellers.
United Farm appeals. We find that the evidence requires a finding that United Farm did procure the buyers of the large parcel of land for the Sellers, but not the smaller parcel with the house. We affirm in part, reverse in part, and remand.
 OPINION
To be entitled to a commission, absent contractual provisions to the contrary, an Alabama real estate broker must procure a purchaser ready, willing, and able to buy from the seller.Perdue v. Gates, 403 So.2d 165, 170 (Ala. 1981). This test logically breaks down into two parts. First, was the purchaser ready, willing, and able to buy? In the case at hand, the parties concede that the purchasers were ready, willing, and able to buy. Therefore, our discussion focuses only on the second part of the test: Did the broker procure the purchasers?
We have approved various definitions of "procurement," a term of art, in our cases. See, e.g., Vulcan Oil Co. v. Gorman,434 So.2d 760 (Ala. 1983); Perdue v. Gates, supra, Mellos v.Silverman, 367 So.2d 1369 (Ala. 1979); Foote v. Moore,342 So.2d 906 (Ala. 1977); Handley v. Shaffer, 177 Ala. 636,59 So. 286 (1912). A distillation of all these definitions, however, gives us a more concise and accurate definition of "procurement": a broker's efforts which are the efficient cause, but not necessarily the sole cause, of a series of unbroken, continuous events, which culminate in the accomplishment of the object of his employment. See, generally, 12 C.J.S. Brokers § 166 (1980). This, then, is the standard by which we must judge the agent's actions to determine if the real estate agency is entitled to a commission.
 A. The Large Parcel of Land
We deal first with the large parcel of land, because the procurement test applies most clearly to it. The instant facts reveal that United Farm's agent had prepared to show the land by personally walking over it and taking pictures and making notes. He physically took the two men, who ultimately purchased the land, to see it. He spent approximately two hours walking over the land with them. He was the source of the two purchasers' knowledge of who the owners/sellers were. Although the two men did not contact the agent again after their initial visit with him, twenty days later they purchased the property directly from the Defendants/Owners.
Under these undisputed facts, we find that the broker's efforts were, as a matter of law, the efficient cause of the sale. Possibly, the broker's efforts were not the sole cause of the sale (i.e., the Defendants/Owners' negotiations with the purchasers subsequent to the broker's showing them the property may have been a contributing factor in the total effort which produced the sale), but, as we indicated above, to be the procuring cause of the sale, it is not necessary that the broker's efforts be the only cause of the sale. See generallyPerdue v. Gates, supra. Moreover, we find that the series of events directly instigated by the broker's efforts and culminating in a sale twenty days later were unbroken and continuous.
In so finding, we are not unmindful of the ore tenus rule. However, where, as *Page 121 
here, the facts are undisputed, the ore tenus presumption of correctness is inapplicable. Home Indemnity Co. v. ReedEquipment Co., 381 So.2d 45, 47 (Ala. 1980). With due deference to the learned trial judge, we are convinced that he misapplied the law of procurement to these undisputed facts. We, therefore, reverse his ruling as to the large parcel of land.
 B. The Smaller Parcel with The House
Whether the broker procured the ready, willing, and able buyer of the smaller parcel with the house is not as clear. After looking at the large parcel of land, on the way back, simply in passing by the house, the broker mentioned to the ultimate purchaser, Mr. Maulden, that the house was for sale also, and that he had it listed. He did not show the house, nor, as with the large parcel of land, did he participate in any negotiations. Undeniably, the broker was the cause of the purchaser and the owners/sellers' coming together, for neither knew of the other except for the efforts of the broker. Indeed, the purchaser, Mr. Maulden, did not know the house was for sale except through the efforts of the broker. But, do these facts constitute "procurement," as a matter of law, as our case law defines it?
While the ore tenus presumption of correctness rule was inapplicable as to the large tract of land, because no contrary inference could be drawn from the undisputed facts, we are unable to conclude that the ore tenus rule is likewise inapplicable with respect to the sale of the house. The substantial difference between the factual background with respect to the large parcel of land and the smaller parcel with the house left the trial judge free to infer from the evidence relating to the sale of the house that the requisites of procurement were not met. Moreover, as we noted earlier, the property presentation notice sent by United Farm to Green concerned itself only with the large tract. Therefore, the oretenus presumption-of-correctness rule with respect to his findings of fact as to the sale of the house requires this Court to affirm that portion of his judgment.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
TORBERT, C.J., and MADDOX, SHORES and BEATTY, JJ., concur.
[1] The agreement itself is an "exclusive right to sell" form; however, in one instance, the words "exclusive right to sell" have been stricken and the word "open" handwritten above. As is well known, "open" and "exclusive right to sell" connote greatly different rights and duties as between the real estate agent and his principal. If this were an "exclusive right to sell" agreement, our analysis would be simple indeed, because, in that instance, the principal/owner would have contracted away his right to sell his own property. Moreno v. May SupplyCo., 280 Ala. 157, 159, 190 So.2d 710, 712 (1966).
Whether this attempted modification of the form would have been binding, in view of other language left intact in the form, is questionable. At any rate, the parties have conceded the agreement to be "open." Thus, we are not confronted with this issue.
[2] The property presentation notice did not specify whether it referred to one or both properties. It did state, however, that "We recently presented your property at the agreed selling price . . . . $75,000"; this was the listing price for the large parcel of land. By way of a separate agreement, the lot with the house was listed for $84,000. Thus, by implication the property presentation notice only referred to the large parcel of land.
[3] Green testified that the property presentation notice that Strother sent him had neither Maulden's nor Rollins's name on it. He stated that only Lott's name appeared on the presentation notice. The notice, however, as admitted into evidence, contained Lott's and Maulden's names. However that may be, the listing agreement provided that the principal/owner was to pay the real estate agency a commission "when a purchaser is procured through you, or your representative, at the stated price and terms, or at any other price and termsacceptable to me." (Emphasis added.) Thus, this was an agreement to simply procure a ready, willing, and able purchaser. With such an agreement, the principal/owner's "knowledge or notice that [a] purchaser came as [a] result of [the] broker's efforts is immaterial." Dancy v. Baker, 209 Ala. 684,684, 96 So. 920, 920 (1923). Compare, Sharpley v. Moody Co., 152 Ala. 549, 44 So. 650 (1907) (broker employed to procure a purchaser and sell land on specified terms).