MADDOX, Justice.
This quiet title action was tried before a judge without a jury. The central legal issue is whether an instrument by a grant- or was a deed or a mortgage. The trial judge determined that the instrument was a mortgage, and quieted title in the appel-lee, Jaguar Land Company. We affirm.
FACTS
The facts, except those surrounding the dispute about the nature of the instrument, are essentially undisputed, but the parties seriously dispute whether the instrument signed by the grantor was a deed transferring title to the grantee or merely a mort *620 gage executed to secure the payment of a promissory note on its maturity date.
The original owner of the property in question was one Laverna Marshall, who testified at trial but who is not a party to this appeal. Marshall was delinquent in her mortgage payments, and the Federal Housing Authority had commenced foreclosure proceedings, the foreclosure sale to take place on May 17, 1985. On May 14, 1985, defendant/appellant, Mary Donaldson, met with Marshall. The facts are in dispute, but it appeared that Marshall had dealings not only with Donaldson, but also with plaintiff/appellee Jaguar Land Company (“Jaguar”). Donaldson claims she entered into a sale arrangement with Marshall on May 14 and paid her $1,060 — the amount Marshall was in arrears on her mortgage. At that time, Marshall signed a promissory note in the amount of $1,060 and gave it to Donaldson. At a later date, she also gave Donaldson the instrument at issue in this case. Based on these facts, Donaldson claims the money she paid to Marshall on May 14 was paid as part of a purchase of the land.
Jaguar also had a meeting with Donaldson. Again, the facts are disputed, but Jaguar claims it entered into a sale and leaseback arrangement with Marshall that would allow her to keep her property. Jaguar claims it attempted to pay back the $1,060 that Donaldson had given Marshall, but that Donaldson deliberately avoided its agents. Jaguar also argues that the Marshall-Donaldson transaction was not a sale and that the instrument given in that transaction was, in fact, a mortgage and was unrecorded at the time Jaguar got its own instrument from Marshall. The instrument from Marshall to Jaguar purports to be a deed, and it is not contested that it in fact is a deed. Jaguar recorded its deed first, and later filed this action to quiet title in it.
I
First, Donaldson contends that the ore tenus presumption of correctness should not apply in this case because the facts are undisputed, citing United Farm Agency of Alabama, Inc. v. Green, 466 So.2d 118 (Ala.1985). Jaguar counters and says that the facts are in dispute. Because of the dispute that surrounded the execution of the instrument from Marshall to Donaldson, we hold that the facts are sufficiently in dispute to make the ore tenus presumption applicable.
Where the trial judge hears ore tenus testimony and resolves conflicting questions of fact, a judgment based on his factual findings will not be disturbed on appeal unless those findings are clearly erroneous or unsupported by credible evidence. May v. Campbell, 470 So.2d 1188 (Ala.1985). Further, when, as here, the court has not specifically stated its findings of fact, we assume that the court made those findings necessary to support its judgment. Thomas v. Davis, 410 So.2d 889 (Ala.1982).
II
The second issue is whether the trial court erred by quieting title in Jaguar. We hold that, given the evidence in the record, the judgment of the trial judge was not clearly erroneous and was supported by credible evidence.
It is unquestioned that Jaguar filed its deed first, and it is also unquestioned that Jaguar had offered to pay Marshall’s indebtedness to Donaldson, at least through Marshall herself, on May 16. Appellant’s basic argument is that Jaguar was not a bona fide purchaser because it had notice of the Marshall-Donaldson transaction. Of course, this argument ignores the possible bases for the trial judge’s ruling. The fact that Jaguar was aware of the earlier transaction is not dispositive. The trial judge in this case made no written findings of fact, but near the end of the testimony, he asked Marshall:
“Q. And it was your understanding when you drew this deal with Mrs. Donaldson that if you paid the thousand and sixty dollars back by July 16th that she would give you the deed back, right?
“A. Yes, Sir.
“Q. And if you didn’t pay it, she was going to give you some money to get you another house to start it?
*621 “A. That’s what she said.”
Based on these answers, the trial judge could have properly determined as a fact that Marshall and Donaldson intended the first “deed” to be in fact only a mortgage to Donaldson of Marshall’s property. That factual finding is supported by other testimony from Marshall:
“Q. I’m simply trying to find out was she [Donaldson] calling about purchasing this particular house on Hatcox Street?
“A. She didn’t say purchase. She said her sister was looking for one. I kept telling her that I wasn’t interested in selling the house; that I was trying to keep the house.
“Q. Okay. Did you sign a deed to Mrs. Donaldson? Did you give a deed to her?
“A. There was, yeah. She kept — That was about the third week.
“Q. Okay. Why did you give that deed to Mrs. Donaldson?
“A. Because it was getting close to the time for foreclosure, and she kept telling me she was a Christian. She was trying to help me. She didn’t like to see peoples lose anything. And that she was more trying to help me than anything else.
<t * # *
“Q. You did sign a deed to Mrs. Donaldson; is that correct?
“A. Yeah.
“Q. And at some point prior to that you had signed a promissory note also to Mrs. Donaldson?
“A. Um-hum (indicating yes).
“Q. For one thousand sixty dollars?
"A. Right.
“Q. Was that the amount needed to take care of the mortgage?
“A. Yes it was.
(( * * *
“Q. Did Mrs. Donaldson assess any interest on that promissory note?
“A. No she didn’t.
“Q. So, the amount was one sixty, or one thousand sixty dollars and that’s what you were supposed to, if you could, pay back within sixty days.
“A. Yeah.
“Q. Was there a reason why no interest was assessed?
“A. That’s what kind of puzzled me, but during that time I really was just under a lot of pressure, but it kind of puzzled me why, cause I didn’t know her and she didn’t know me. And but she kept just insisting on that she was a Christian lady; that she was just trying to help me.
“Q. Well, was she not trying to help you keep the property?
“A. Yeah, that’s what I thought at first.
“Q. Wasn’t the whole idea was in that sixty day period you would be able to get the property back if you returned—
“A. Yeah, I had until July the 16th.
“Q. Was that your understanding that that was sixty days?
“A. To my understanding it was. That’s what — from what she — the paper that she gave me and what she also said herself, that’s what I was going by.
tt # * *
“Q. Okay. Did Mrs. Donaldson ever tell you that she was holding a mortgage on this property?
“A. She just only told me she was holding it until I could come up with money and if I couldn’t come up with the money July the 16th, that she would take up the mortgage on the house_ And that she will give me — she didn’t state no certain amount, but she stated that she would give me enough financial to start fresh, you know, start all over again.
“Q. She was going to take over the mortgage plus give you some equity in the property?
“A. That’s what she told me.
U * * *
“Q. And you signed no other document with Mrs. Donaldson other than that deed and that note?
“A. That’s all.
“THE COURT: Did Jaguar pay you any money when you gave them a deed?
“MRS. MARSHALL: The agreement was to pay off just the things that I had on the house, and then I could continue to live there.
“MR. WINDOM: Judge, the agreement is that we [Jaguar] would pay off, or *622 satisfy the mortgage to Reverend Gibbs, satisfy Mrs. Donaldson’s claim, and then lease the property back to her with an option to buy it back. * * * ”
While much of this testimony was in some manner contradicted by Donaldson, the trial judge was in the best position to observe the witnesses on the stand and make findings of fact. This testimony is sufficient to support the judgment of the trial court that the arrangement between Donaldson and Marshall was a loan with security and not a sale. Could the trial court declare the Marshall-Donaldson “deed” to be a mortgage? Yes.
“It has been settled since the early decisions of this Court that a court of equity in this state has jurisdiction to entertain a bill to have a deed declared a mortgage and to grant such relief.” Cousins v. Crawford, 258 Ala. 590, 597, 63 So.2d 670, 676 (1953).
Applying the ore tenus rule, we find that the judgment is supported by credible evidence. The judgment is therefore due to be, and it is hereby, affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, ALMON and HOUSTON, JJ., concur.